UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

```
-----------------------------------------------------
IN RE:                              )
                                    )    CASE NO. 12-21924 (ASD)
ROBIN DELANEY,                      )
                                    )    CHAPTER 7
        DEBTOR.                     )
-----------------------------------------------------
DONNA PARRIS,                       )    ADV. PRO. NO. 12-02078
                                    )    (CONSOLIDATED WITH
        PLAINTIFF,                  )    ADV. PRO. NO. 12-02081 UNDER
v.                                  )    ADV. PRO. NO. 12-02078)
                                    )
ROBIN DELANEY,                      )
                                    )    RE: ECF NO. 17
        DEFENDANT.                  )
-----------------------------------------------------
IN RE:                              )
                                    )    CASE NO. 12-22099 (ASD)
CHARLES PAPPAS,                     )
                                    )    CHAPTER 7
        DEBTOR.                     )
-----------------------------------------------------
DONNA PARRIS,                       )    ADV. PRO. NO. 12-02081
                                    )    (CONSOLIDATED WITH
        PLAINTIFF,                  )    ADV. PRO. NO. 12-02078 UNDER
                                    )    ADV. PRO. NO. 12-02078)
v.                                  )
                                    )
CHARLES PAPPAS,                     )
                                    )
        DEFENDANT.                  )
------------------------------------------------------
```

APPEARANCES:
Michael J. Coolican, Esq.,                  Attorney for Plaintiff, Donna Parris
Bracewell & Giuliani LLP,
225 Asylum Street (Suite 2600)
Hartford, CT 06103


Derek G. Poirier, Esq.,                     Attorney for Defendants/Debtors,
Law Offices of John Q. Gale, LLC,           Robin Delaney and Charles Pappas,
363 Main Street (4th Floor)
Hartford, CT 06106

**MEMORANDUM OF DECISION ON PLAINTIFF'S
UNCONTESTED MOTION FOR SUMMARY JUDGMENT ON COMPLAINTS TO
DETERMINE NONDISCHARGEABILITY OF DEBT PURSUANT TO
BANKRUPTCY CODE SECTION 523(a)(6)**

ALBERT S. DABROWSKI, *Chief United States Bankruptcy Judge*

## I.   INTRODUCTION

In these consolidated adversary proceedings[1],  Adv. P. No. 12-02078 (Parris v.

Delaney) and Adv. P. No. 12-02081 (Parris v. Pappas), Donna Parris (hereinafter, "Parris"

or the "Plaintiff") seeks to have declared non-dischargeable under Bankruptcy Code

§523(a)(6) a debt arising from "willful and malicious injury" to her by the

Defendants/Debtors, Robin Delaney (hereinafter, "Delaney") and Charles Pappas

(hereinafter, "Pappas") (hereinafter, together, the "Defendants"). The Plaintiff has moved

for summary judgment based upon the alleged preclusive effect of a prior judgment

rendered by the United States District Court for the District of Connecticut (hereinafter, the

"District Court Judgment") in *Parris v. Charles Pappas, Robin Delaney,* Case No.

3:10CV1128 (WWE) (hereinafter, the "District Court Case").  Neither Delaney nor Pappas

have filed a response to the summary judgment motion within the 21 day period provided

by the Local Rules or at any time thereafter.   *See* D. Conn L. Civ. R. 7(a)1 and 56(a)(4),

made applicable to bankruptcy proceedings by D. Conn. LBR 1001-1.  For the reasons

which follow, the motion for summary judgment will be **GRANTED**.

---

[1] Upon the Plaintiff's *Motion for Consolidation,* ECF No. 6 (in both adversary proceedings), on the grounds, *inter alia,* that the two proceedings "share the exact same common questions of law and fact," and with the consent of the Defendants, the Court entered an Order on December 17, 2012 consolidating the proceedings, ECF No. 9 (in both proceedings).  Subsequent to Pappas filing an Answer to Complaint, ECF No. 11 (Adv. P. No. 12-2081), all pleadings in connection with these adversary proceedings have been filed in Adv. Proceeding No. 12-02078 (Delaney) as the lead proceeding, and except where otherwise indicated, all references to "ECF No. __ " refer to the docket of Adv. P. 12-2078.

## II.   JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the instant proceedings by virtue of 28 U.S.C. §1334(b), and the Bankruptcy Court derives its authority to hear and determine these matters on reference from the District Court pursuant to 28 U.S.C. §§157(a), (b)(1).   These are "core proceedings" pursuant to 28 U.S.C. §157(b)(2)(I).

## III.   PROCEDURAL BACKGROUND

On August 6, 2012, Delaney commenced Bankruptcy Case No. 12-21924 by the filing of a voluntary petition under Chapter 7 of the United States Bankruptcy Code. Thomas C. Boscarino, Esq. was appointed as the Chapter 7 trustee.  On November 13, 2012, the Plaintiff commenced Adversary Proceeding 12-2078 by the filing of a Complaint against Delaney seeking to have declared non-dischargeable the District Court Judgment debt for damages in the amount of $262,407, a previously determined attorneys' fee award in the amount of $87,392, and an additional, unliquidated sum awarded for supplemental attorneys' fees and costs.[2] Delaney received her general discharge of debts under Bankruptcy Code §727 on November 15, 2012.

On August 29, 2012, Pappas commenced Bankruptcy Case No. 12-22099 by the filing of a voluntary petition under Chapter 7. Thomas C. Boscarino, Esq. was appointed as the Chapter 7 trustee.  On November 26, 2012, the Plaintiff commenced Adversary Proceeding 12-2081 by the filing of a Complaint against Pappas seeking to have declared non-dischargeable the same District Court Judgment debt for damages in the amount of

---

[2]While the Complaints include a request for statutory interest, it does not appear that an award for same was made in the District Court Case.

$262,407, the same attorneys' fee award in the amount of $87,392, and the same

additional, unliquidated sum awarded for supplemental attorneys' fees and costs.  In the

Complaint against Pappas, the Plaintiff also sought a denial of Pappas' discharge under

Bankruptcy Code §727(a)(2) on the grounds that Pappas transferred or concealed property

with the "intent to hinder, delay, or defraud a creditor," within one year before the date of

the filing of his bankruptcy petition.  As a consequence, Pappas has not as yet received

a general discharge of his debts[3].

On February 1, 2013, the Plaintiff filed *Plaintiff's Motion for Summary Judgment*

(hereinafter, the "Motion"), ECF No. 17, accompanied by *Exhibit A, Plaintiff's Local Rule

56(a)1 Statement*, ECF No. 17-1, Memorandum of Law*, the *Affidavit of Donna Parris in

Support of Defendant's Motion for Summary Judgment,* ECF No. 18-2 with attached

*Exhibits A* and *C* through *Z; Exhibits AA, AB, AC, AD, AE, AF, AG, AH*, and the *Declaration

of Counsel in Support of Plaintiff's Motion for Summary Judgment,* Exhibit *AJ*.  In her

Motion and Memorandum of Law, the Plaintiff asserts that her claims for non-

dischargeability under §523(a)(6) as set forth in each of the Complaints, have been

conclusively resolved in the District Court Case.

## IV.   FACTUAL BACKGROUND.

For purposes of summary judgment, the Plaintiff relies on numerous findings of

material fact as determined in the District Court Case and asserts by reason of collateral

estoppel those findings to be dispositive of these adversary proceedings as no genuine

---

[3]The Plaintiff has indicated in her *Memorandum of Law in Support of Plaintiff's Motion for
Summary Judgment* (hereinafter, "Memorandum of Law"), n.1,  ECF No. 18, that she does not presently
seek to deny Pappas his discharge pursuant to §727(a)(2).

issue remains to be tried in connection with these proceedings. The Plaintiff's fifteen (15) page Rule 56(a)1 Statement consists of ninety-two separately numbered paragraphs with specific citation to numerous exhibits and evidence, supported by a Memorandum of Law with copies of 37 Exhibits attached thereto. Against this background of, *inter alia*, the Plaintiff's conforming Rule 56(a)1 Statement, the failure of the Defendants to file a responsive a Rule 56(a)2 Statement, the pleadings, together with the affidavits, supporting exhibits, and other relevant files and records of the instant cases and proceedings, and the determinations of in the District Court Case,[4] the following facts, are undisputed or cannot be disputed, and/or are deemed admitted.

At all relevant times, the Plaintiff was the owner of, and resided in, a mobile-manufactured home purchased from Anna Alexis, LLC on November 5, 2006, which was located on a rented parcel of land known as Lot # 6 at Normandies Park in Dayville, Connecticut (hereinafter, the "Park Property"). A rental agreement dated July 1, 2008 (hereinafter, the "Rental Agreement") required, *inter alia*, that the Park Property owner Anna Alexis, LLC, shall maintain all electrical, plumbing, gas, or other utilities provided in good working condition. The Rental Agreement also required the maintenance and service of the septic system, and further required the Park Property owner to maintain all water and sewer lines and connections. During an emergency situation, repairs are required to be made within 72 hours. Anna Alexis, LLC, was an owner of Normandies Park from at least December 2005 through April 8, 2010, and Delaney was manager of Normandies Park and

---

[4] In addition to consideration of the uncontrovered Rule 56(a)1 Statement and supporting exhibits, the Court takes judicial notice of the files and records of Bankruptcy Case Nos. 12-21924 (Delaney), 12-22099 (Pappas), the instant consolidated adversary proceedings, and the District Court Case. *See Mangiafico v. Blumenthal*. 471 F.3d 391, 398 (2d Cir. 2006)

a member of Anna Alexis, LLC.  From April 8, 2010 forward, Normandies Park, LLC, was the owner of the Park Property, and Pappas was a member of Normandies Park, LLC.

The Plaintiff is a person with a disability.  The Social Security Administration has deemed Plaintiff disabled as a result of her diabetes mellitus, retinopathy, generalized sensory-motor polyneuropathy, bilateral ulnar neuropathy and orthostatic hypotension. Plaintiff's disabilities cause frequent drops in blood pressure that lead to her loss of consciousness, eye problems and significant nerve damage in her extremities. Plaintiff requires a 24-hour live-in aide to manage her federally-recognized disabilities.  In February 2009, an aide moved into Plaintiff's home to provide 24-hour live-in care.  Defendants had been aware of the aide since the time he moved into Plaintiff's home and accepted monthly rental checks from the aide.

In March 2009, Plaintiff began to experience problems with her septic tank, including sewage backing up into the toilets, the failure of the leaching mechanism causing sewage to surface underneath her home and into the yard, unbearable stench in and around her home, and the destruction of property stored under her home.  The septic system required servicing on numerous occasions and often the repair work was not performed timely.  In an effort to remediate the septic problems, the Plaintiff contacted the Town of Killingly in October 2009 and March 2010 and the Connecticut Department of Consumer Protection. The Town of Killingly notified the Northeast Division of the Department of Public Health on Plaintiff's behalf.

On at least three different occasions, Defendants pressured Plaintiff to alter the Rental Agreement so that Plaintiff would bear the burden of repairing and maintaining the septic system.  After Plaintiff reported that the septic system had overflowed to the Town

of Killingly, the Defendants sent the Plaintiff a letter stating that she was in violation of her lease because she had an unauthorized tenant (her live-in aide) and an unauthorized shed on the Park Property. The Plaintiff's physician requested this reasonable accommodation of a tenant in writing, but the Defendants denied the request and sought to evict the Plaintiff on the ground that her live-in aide was an "unauthorized tenant."

On March 23, 2010, the Defendants' attorney at that time issued an ultimatum to Parris, allowing her to have a 24-hour live-in aide but only if she agreed to pay $300 every time the septic tank required servicing; if she did not agree, the Defendants would evict her. The following day, the Defendants served the Plaintiff with a "Notice to Quit," alleging that she had an unauthorized tenant and an unauthorized shed on the property.  The Defendants also filed and served in the Connecticut Superior Court a Summary Process Complaint dated June 17, 2010.

On July 20, 2010, in the United States District Court for the District of Connecticut, the Plaintiff filed a civil rights action against the Defendants for declaratory and injunctive relief and damages, alleging a violation of the Fair Housing Amendments Act, 42 U.S.C. §3601, *et seq* (hereinafter, the "FHA"); a violation of Connecticut's Discriminatory Practices Act, Conn. Gen. Stat. §46a-64c; Breach of Contract; Breach of the Covenant of Good Faith and Fair Dealing; and a violation of the Connecticut Unfair Trade Practices Act (hereinafter, "CUTPA"), Conn. Gen. Stat. §42-ll0b, *et seq*. The Plaintiff also sought the entry of a preliminary injunction.

The Honorable Warren W. Eginton, Senior United States District Judge (hereinafter, "Judge Eginton"), granted a default judgment for failure of the Defendants to appear or file

an Answer or other pleadings, in favor of the Plaintiff on December 2, 2010, and referred the matter to United States Magistrate Judge Holly B. Fitzsimmons (hereinafter, the "Magistrate") for a recommended ruling on damages.  Judge Eginton also granted the Plaintiff's motion for a preliminary injunction on December 14, 2010.  The District Court enjoined the mobile home park owners Pappas, Delaney, Anna Alexis, LLC and Normandies Park, LLC, to allow Plaintiff the reasonable accommodation for her disabilities of having a 24 hour live-in aide; prohibited defendants from retaliating against Plaintiff; and ordered Normandies Park, LLC to cease its retaliatory eviction proceeding against Plaintiff. Counsel for Defendants filed an appearance on December 13, 2010, and thereafter on December 16, 2010, filed a Motion to Reopen.  The Defendants also filed an Answer to the Complaint on December 17, 2010.  Judge Eginton denied the Defendants' Motion to Reopen on February 23, 2011.

A hearing on damages was held before the Magistrate on March 24 and April 14, 2011, at which the Plaintiff and both Defendants appeared and testified and were represented by counsel, with briefs filed by all sides.  Thereafter, on May 17, 2011, the Plaintiff filed a motion for an award of attorneys' fees in the amount of $105,712.50 for time spent between the period of May 4, 2010 and May 17, 2011.  On June 14, 2011, a second motion for attorneys' fees in the amount of $4,230.00, covering the period of May 18, 2011 through June 14, 2011 was filed.  These motions were granted by the Magistrate on January 4, 2012, in the reduced amount of $87,392.50.

In her Recommended Ruling on Damages (hereinafter, the "Recommended Ruling"), also issued on January 4, 2012, the Magistrate found that Parris suffered

8

significant emotional and physical distress arising from the Defendants' actions. Specifically, the Magistrate found that the Plaintiff experienced fear and anxiety at the prospect of losing her live-in aide and the loss of her home through eviction proceedings initiated by Defendants; that her medical conditions were severe and the services provided by her live-in aide were necessary; that the loss of her live-in aide would prevent Parris from taking insulin shots, properly dressing herself, cooking in her home, noticing if she injured herself, making emergency phone calls and generally monitoring her medical condition; that she feared she would lose her home to eviction; that there was a real and imminent threat that she could lose her home; that the Plaintiff was treated for anxiety, depression and insomnia caused by Defendants' acts and that her medical conditions were exacerbated as a result; and finally, that the Plaintiff suffered emotional and physical distress due to the pervasive and repetitive septic problems, the intense smell associated with the presence of raw sewage and Defendants' actions in response to Plaintiff's complaints; that she was frightened and experienced anxiety attacks, depression, crying and insomnia.

The Magistrate further found that the septic system required servicing in March 2009, July 2009, twice in October 2009, once in November 2009, once more during the 2009 -10 Winter, on or about March 18, 2010 and two additional times since March 2010; that the odor made the Plaintiff violently ill and caused vomiting that affected her blood sugar levels, blood pressure and hydration and bruised her chest; that the septic issues contributed to her stress, anxiety, and insomnia; that when the septic system backed up into her sinks and bathtub, she was unable to use the sinks or bathroom, cook, clean or use the washing machine and dishwasher; that she stayed in a hotel room on three

occasions at a cost of approximately $85 per night because her home was not habitable; that in order to prevent further septic issues, Plaintiff stopped using her dishwasher and washing machine thereby incurring expenses to purchase paper products and disposable pans and weekly trips to the Laundromat; that items with an estimated value of $800 that were stored below her house had to be thrown away because of the septic system overflow; and finally that the septic problem detrimentally impacted her enjoyment of her home and yard.

The Magistrate recommended that Judge Eginton award to the Plaintiff a total of $112,407 in compensatory damages.  In particular, the Magistrate recommended that Parris be awarded $100,000 in compensatory damages for violations of her civil rights protected by the FHA for (1) Defendants' failing to accommodate her disability; ( 2) threatening to evict her because she had a 24-hour live-in care provider; (3) attempting to use Plaintiff's request for a reasonable accommodation as leverage to coerce a new lease agreement that would require her to pay for sewage repairs; and (4) filing a notice to quit on March 24, 2010, a Summary Process Complaint on June 17, 2010 and an amended Summary Process Complaint on August 3, 2010.  Beginning with the threatened eviction in November 2009, the eviction proceeded for more than a year and was only withdrawn after the Court's December 14, 2010 granting of a preliminary injunction.  The Magistrate also awarded Parris an additional $12,407 in compensatory damages for "ascertainable losses" under CUTPA.  In particular, the Magistrate found that the Defendants' collection of rent while violating Plaintiff's FHA rights, failing to resolve the septic issues in an effort to coerce a new rental agreement, and commencing eviction proceedings was unfair, offended public policy and caused injury to the Plaintiff, entitling her to a refund of rent paid

during the period.   The Plaintiff was also allowed damages as a result of her loss of

property, for costs incident to her loss of the use of her dishwasher and washing machine

and use of a hotel on three occasions.   The Magistrate based the amount of compensatory

damages on her conclusion that the emotional and physical distress suffered by the

Plaintiff should be characterized as "significant."

Further, the Magistrate awarded the Plaintiff $150,000 in punitive damages,

allowable under the FHA.[5]   In this regard the Magistrate held:

> First, defendants' conduct toward Ms. Parris was highly reprehensible. The
> record contains evidence that defendants acted willfully, maliciously and/or
> with reckless disregard for plaintiff's FHA rights when they failed to
> accommodate her disability.  Particularly, there is evidence that after plaintiff
> provided proof of her medical disability, defendants continued eviction
> proceedings until they were ordered by the Court to withdraw the action. *See*
> *Space Hunters, Inc.*, 429 F.3d at 427 ("A plaintiff may establish the requisite
> state of mind for an award of punitive damages with evidence (1) that the
> defendant discriminated in the face of a perceived risk that its actions
> violated federal law, or (2) of egregious or outrageous acts that may serve
> as evidence supporting an inference of the requisite evil motive.").
>
> As set forth in this opinion, the evidence also indicates that
> defendants' actions inflicted emotional and physical harm to plaintiff.
> Moreover, despite a court-ordered agreement to refrain from dissipating
> assets, Defendants have reduced the value of the disclosed properties by
> failing to pay taxes, listed some of the disclosed properties for sale and took
> steps to further encumber the property by incurring expenses for work by
> outside contractors whom they did not pay, resulting in mechanics liens....

--------------------------------------------

[5]Punitive damages are limited to cases in which the defendant has
engaged in intentional discrimination and has done so with malice or with reckless
indifference to the federally protected rights of an aggrieved individual. Malice and
reckless indifference refer to the [defendant's] knowledge that it may be acting
in violation of federal law, not its awareness that it is engaging in
discrimination. A plaintiff may establish the requisite state of mind for an award of
punitive damages with evidence (1) that the defendant discriminated in the face of a
perceived risk that its actions violated federal law, or (2) of egregious or
outrageous acts that may serve as evidence supporting an inference of the requisite evil
motive.

*United States v. Space Hunters, Inc.*, 429 F.3d 416, 427 (2d Cir.2005) (internal quotation marks and
citations omitted).

11

The record reflects they tried to take advantage of her for their own financial benefit.

Recommended Ruling, ECF No. 18-29, Ex. AB. The Magistrate did not award the Plaintiff additional punitive damages under CUTPA, but only because she found that to do so would duplicate the award made under the FHA.

On January 18, 2012, the Defendants, through their counsel, objected to the Magistrate's rulings as to damages and attorney fees. On February 2, 2012, Judge Eginton approved and adopted the Recommended Ruling, and the District Court Judgment entered thereafter on February 10, 2012, for a total damages award of $262,407 and authorized the Plaintiff to file a bill of costs. Also on February 10, 2012, Judge Eginton separately adopted over objection and upon clearly erroneous review, the Magistrate's ruling as to attorneys' fees. On March 9, 2012, Defendants filed *inter alia*, a motion to stay the judgment, an appeal of the judgment, an appeal of the denial of the motion to reopen, an appeal of the approval and adoption of the Magistrate's Recommended Ruling and appeal of the award of attorneys' fees. Judge Eginton denied the motion for stay on March 26, 2012.

On March 27, 2012, the Magistrate granted the Plaintiff's motion to compel and for sanctions for failure of the Defendants' to make a full disclosure of their assets, and for violation of court orders regarding the dissipation of assets without legitimate excuse for their non-compliance. On August 6, 2012, the Magistrate, *inter alia*, granted the Plaintiff's request for additional attorneys' fees and costs related to the motion to compel and for sanctions and directed Plaintiffs' counsel to submit time records in the form of affidavits by September 1, 2012. Delaney having filed bankruptcy on August 6, 2012 and Pappas on

August 29, 2013, at 3:43 PM,[6] no time records or bill of costs were submitted.

## V.  DISCUSSION.

### A.    Summary Judgment Standards

Federal Rule of Civil Procedure 56(a), made applicable to these proceedings by Fed. R. Bankr. Pro. 7056, directs that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Upon consideration of a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *see also Jasco Tools, Inc. v. Dana Corp.* (*In re Dana Corp.)*, 574 F.3d 129, 151 (2d Cir. 2009).

The moving party has the burden of showing that there are no material facts in dispute, and all reasonable inferences are to be drawn, and all ambiguities resolved, in favor of the non-moving party.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also United Transp. Union v. National R.R. Passenger Corp.*, 588 F.3d 805, 809 (2d Cir. 2009).  The Court, in ruling upon a summary judgment motion, "cannot try issues of fact, but can only determine whether there are issues of fact to be tried." *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir.1984), quoting *Empire Electronics Co. v. United States*, 311 F.2d 175, 179 (2d Cir. 1962).

### B.    Local Rule 56(a)

---

[6]While the District Court's order entered on August 6, 2013 is effective as to Pappas, it is unclear whether the order was effective as to Delaney without information as to whether it entered prior to 3:43PM when the Bankruptcy Code §362(a) automatic stay took effect.

Local Rule 56(a) of the Local Civil Rules of the United States District Court for the

District of Connecticut (hereafter, the "Local Rule(s)") supplements Fed. R. Civ. P. 56(c)

by requiring statements of material fact from each party to a summary judgment motion.[7]

Under Local Rule 56(a)1, the material facts set forth in a movant's statement "will be

deemed to be admitted unless controverted by the statement required to be filed and

served by the opposing party in accordance with Local Rule 56(a)2." In the present

proceedings, the Plaintiff has fully complied with the Local Rules and has filed, *inter alia*,

a Local Rule 56(a)1 Statement; the Defendants have failed to file the requisite Local Rule

56(a)2 Statement. Accordingly, all material facts set forth in the Local Rule 56(a)1

---

[7] Local Rule 56(a), entitled "Motions for Summary Judgment,"applicable to this proceeding by D. Conn. LBR 1001-1(b), states in pertinent part as follows:

1.  There shall be annexed to a motion for summary judgment a document entitled "Local Rule 56(a)1 Statement", which sets forth in separately numbered paragraphs a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried.  All material facts set forth in said statement will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Local Rule 56(a)2.

2.  The papers opposing a motion for summary judgment shall include a document entitled "Local Rule 56(a)2 Statement," which states in separately numbered paragraphs corresponding to the paragraphs contained in the moving party's Local Rule 56(a)1 Statement whether each of the facts asserted by the moving party is admitted or denied.  The Local Rule 56(a)2 Statement must also include in a separate section entitled "Disputed Issues of Material Fact" a list of each issue of material fact as to which it is contended there is a genuine issue to be tried.

3. Each statement of a material fact by a movant in a Local Rule 56(a)1 Statement or by an opponent in a Local Rule 56(a)2 Statement, and each denial in an opponent's Local Rule 56(a)2 Statement, must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial.  The affidavits, deposition testimony, responses to discovery requests, or other documents containing such evidence shall be filed and served with the Local Rule 56(a)1 and 2 Statements in conformity with Fed. R. Civ. P. 56(e).  Counsel and pro se parties are hereby notified that failure to provide specific citations to evidence in the record as required by this Local Rule may result in sanctions, including, when the movant fails to comply, an order denying the motion for summary judgment, and, when the opponent fails to comply, an order granting the motion.

* * * *

Statement are deemed admitted. Local Rule 56(a)(1); *Local 1336, Amalgamated Transit, Union, AFL-CIO v. First Student, Inc.*, 3:11-CV-1850, 2013 WL 588199, at *1-2 (D. Conn. Feb. 13, 2013) (deeming certain facts admitted and ultimately granting summary judgment where non-moving party failed to respond to summary judgment motion); *In re Bugnacki)*, 439 B.R. 12, 18 (Bankr. D. Conn. 2010) (deeming certain facts admitted and ultimately granting summary judgment where non-moving party's counter-statement of facts did not comply fully with local rules).

Nevertheless, even where, as here, parties chose the perilous path of failing to respond to a summary judgment motion, the "court must still assess whether the moving party ha[s] fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a matter of law." *See Vermont Teddy Bear Co., Inc. v. 1-800 BEARGRAM Co.*, 373 F.3d 241, 246 (2d Cir. 2004). "If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied *even if no opposing evidentiary matter is presented*." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006), quoting *Vermont Teddy Bear* at 244.

## C.  *Standards for the Application of Collateral Estoppel in These Proceedings*

It is settled that collateral estoppel, also known as issue preclusion, is applicable in dischargeability proceedings*, Grogan v. Garner*, 498 U.S. 279, 284 (1991), and that parties may invoke collateral estoppel to preclude relitigation of the elements necessary to meet a §523(a) exception. *Id.* at 285 n. 11; *see also Wolstein v. Docteroff (In re Docteroff)*, 133 F.3d 210 (3rd Cir. 1997).  The requirements for collateral estoppel which are applied to

15

establish the preclusive effect of a prior federal judgment are that "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006), *quoting Purdy v. Zeldes*, 337 F.3d 253, 258 & n.5 (2d Cir. 2003)(internal quotation marks omitted). In these proceedings, if the Magistrate's Recommended Ruling, adopted in its entirety by Judge Eginton, contains sufficient findings of fact to satisfy the "willful and malicious" standard of §523(a)(6), and the doctrine of collateral estoppel otherwise applies, the Plaintiff's Motion must be granted.

      1.   Identity of Issues.

In performing the identity of issues analysis, the Court must inquire into the actual facts found and presented in the prior litigation, and determine "whether the issues presented by this litigation are in substance the same as those resolved in [the District Court Case]; whether controlling facts or legal principles have [not] changed significantly since the [federal] court judgment; and finally, whether other special circumstances warrant an exception to the normal rules of preclusion.*" Montana v. United States*, 440 U.S. 147, 155 (1979); *NBA Properties v. Moir (In re Moir)*, 291 B.R. 887, 891-892 (Bankr. S.D. Ga. 2003) ("When issues in the bankruptcy proceeding 'closely mirror' issues in the prior action, the issues are sufficiently identical for purposes of federal collateral estoppel").

Under the Bankruptcy Code, a discharge is not available for a debt resulting from a "willful and malicious injury by the debtor to another entity or to property of another

entity." 11 U.S.C. §523(a)(6).[8]  A creditor seeking to establish nondischargeability under

this or any other section of 523(a) must do so by a preponderance of the evidence.

*Grogan v. Garner*, 498 U.S. at 291; *Orr v. Marcella (In re Marcella)*, 463 B.R. 212, 219

(Bankr. D. Conn. 2011). In *Kawaauhau v. Geiger*, 523 U.S. 57, 61(1998), the United States

Supreme Court made clear that "willful" as referenced in that section means "a deliberate

or intentional injury, not merely a deliberate or intentional act that leads to injury." *Id*. "[A]

debtor is responsible for a 'willful' injury when he or she commits an intentional act the

purpose of which is to cause injury or which is substantially certain to cause injury."

*Maxwell v. Jennings (In re Jennings),* 670 F.3d 1329, 1334 (11th Cir. 2012*); quoting In re*

*Walker,* 48 F.3d 1161, 1163 (11th Cir. 1995). *Accord, Ormsby v. First Am. Title Co. (In re*

*Ormsby)*, 591 F.3d 1199, 1206 (9th Cir. 2010); *Chaffee v. Chaffee (In re Chaffee)*, No. 07-

11636, 2013 Bankr. LEXIS 3641, at *18 (Bankr. N.D.N.Y. September 3, 2013); *Yash Raj*

*Films (USA) v. Ahmed,* 359 B.R. 34, 44 (Bankr. E.D.N.Y. 2005).

In this case, the Magistrate specifically found that the evidence demonstrated that

the Defendants acted "willfully, maliciously and/or with reckless disregard for plaintiff's FHA

rights when they failed to accommodate her disability."  Recommended Ruling p. 22.  The

Defendants intentionally retaliated against the Plaintiff when she sought to compel the

Defendants to adequately repair her septic system by denying her the right to have a live-in

aide, failing to resolve the septic issues in an effort to coerce her into a new rental

agreement more favorable to the Defendants and thereafter, by trying to evict her from her

---

[8]Section 523(a)(6) provides:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor
from any debt— **. . .** (6) for willful and malicious injury by the debtor to another entity or to
the property of another entity.

home.  The Magistrate further found that such conduct was "unfair, offends public policy and caused injury to plaintiff," Recommended Ruling p. 27, and that "[the Defendants] tried to take advantage of [the Plaintiff] for their own financial benefit."  Recommended Ruling p. 24-25. Distilled to their essence the facts found by the Magistrate reflect not just that the Defendants acted in a way that was substantially certain to cause injury, and in "reckless disregard for plaintiff's FHA rights", but that they had a specific purpose behind their retaliatory acts, and failures to act, to inflict injury sufficient to coerce Parris to assume financial responsibility for repairs the septic system, and ultimately to motivate her to move from the Park Property.  And the Defendants acted in a particular heinous and selfish manner causing a severely disabled Plaintiff to experience great pain, physical and emotional, *see* pp. 8-10, *supra*. In sum, the conduct of the Defendants as determined by the Magistrate and approved and adopted by Judge Eginton, mirrors the "willfullness" requisite of  §523(a)(6).[9]

The "malice"  requisite of §523(a)(6) is distinct from the "wilfulness" element and the two elements cannot be "lumped" together.  For a wilful injury also to be considered malicious, it must be "wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill-will. . . . Malice may be implied 'by the acts and conduct of the debtor in the context of [the] surrounding circumstances.'"  *Ball v. A.O. Smith Corp*., 451 F.3d 66, 69 (2d Cir. 2006), quoting *Navistar Fin. Corp. v. Stelluti (In re Stelluti)*, 94 F.3d 84, 88 (2d Cir. 1996); *Orr v. Marcella (In re Marcella)*, 463 B.R. 212 (Bankr. D.Conn. 2011).

---

[9]In support of her determination to enter an award of punitive damages in the case, the Magistrate quoted from *United States v. Space Hunters, Inc.,* 429 F.3d 416, 427 (2d Cir. 2005), in which the court of appeals stated that in order for punitive damages to be awarded under the FHA the defendant must have engaged in "intentional discrimination . . . ."

18

Malice may also be implied when "'anyone of reasonable intelligence knows that the act in question is contrary to commonly accepted duties in the ordinary relationships among people, and injurious to another.' *In re Hambley*, 329 B.R. [382, 402 (Bankr. E.D.N.Y. 2005)] (quoting *United Orient Bank v. Green*, 215 B.R. 916, 928 (S.D.N.Y. 1997))."' *Yash Raj Films (USA), Inc. v. Akhtar (In re Akhtar)*, 368 B.R. 120, 132 (Bankr. E.D.N.Y. 2007).

The Magistrate also made specific factual findings establishing that the Defendants' conduct was "malicious" according to the definition set forth by the Second Circuit in *Ball v. A.O. Smith Corp.*, 451 F.3d at 69, *i.e.*, and *In re Stelluti*, 94 F.3d 88, *i.e.*, "wrongful[10] and without just cause or excuse, even in the absence of personal hatred, spite or ill-will." Malice can also be implied from the Defendants' conduct in this case.  The Magistrate found that the Plaintiff was seriously disabled and would be placed at serious health risk if she were not allowed to have an aide live with her.  It therefore would have been readily apparent to persons of "reasonable intelligence" that forcing an individual to live with the unpleasant consequences of a faulty sewage system, "[would be] contrary to commonly accepted duties in the ordinary relationships among people, and injurious to another" -- particularly a disabled person requiring a live-in aide as a result of significant physical ailments.  Further, the Defendants continued in their efforts to evict her even after they were given proof that she was disabled and only ceased when they were forced to do so by the District Court.  Recommended Ruling p. 22.  "[I]t is clearly established that plaintiff suffered emotional and physical distress due to the pervasive and repetitive septic problems, the intense smell associated with the presence of raw sewage and defendants'

---

[10]"Wrongful" is defined in Black's Law Dictionary, 5th ed., as "[i]njurious, heedless, unjust, reckless, unfair," and as an "[i]nfringement of some right,"  words that clearly describes the Defendants' conduct in this case.

actions in response to plaintiff's complaints."   Recommended Ruling p. 9.

While the elements of a violation of a plaintiff's FHA rights allow for the possibility of a recovery when a defendant has not acted "maliciously" but merely with "reckless disregard," by making an additional award of punitive damages in this case, the Magistrate recognized that the Defendants' conduct was "highly reprehensible," thus raising the level of harm above that of mere recklessness.  In *In re Moir*, 291 B.R. at 892, the court similarly recognized that while a "conversion" does not necessarily have to be "willful and malicious" and held that a "judgment for conversion enhanced by punitive damages establishes a wrongful act, done intentionally, which necessarily produces harm and is without just cause or excuse, a 'willful and malicious' act of § 523(a)(6)."

Further, in entering an award of punitive damages, the Magistrate made particular note of the defendants' conduct in ignoring a court-ordered agreement to refrain from dissipating their assets: first, by failing to pay taxes and thus reducing the value of the disclosed properties, second, by listing some of the disclosed properties for sale and third, by taking steps to further encumber their property by incurring expenses for work by outside contractors whom they did not pay, resulting in mechanics liens.  Recommended Ruling p. 22.[11]

It is clear that issues identical to those required for a determination of nondischargeability pursuant to §523(a)(6), including whether the Plaintiff was injured by "willful and malicious" conduct of the Defendants, were raised, and as discussed in more

---

[11]This pattern of ignoring court orders entered in the case continued, and on March 27, 2012, the Magistrate granted Plaintiff's Motion for Sanctions in connection with the Defendants' conduct in post-judgment discovery, finding on the record that "it was 'clear' defendants had not made a full disclosure and offered no legitimate explanation for failing to follow the Court's order."

detail immediately hereinafter, actually litigated and decided in the District Court Case.

2.      All Issues Necessary for a Determination of Nondischargeability in These Proceedings Were Actually Litigated and Decided in the District Court.

The second requirement for collateral estoppel necessary to establish the preclusive effect of the District Court Judgment has also been satisfied. While a default judgment was entered in the early stage of the District Court Case, it is clear from the Plaintiff's Rule 56(a)1 Statement and supporting exhibits summarized in Part IV, Factual Background, pp. 4-12, *supra* (recitation of facts previously found by the Magistrate and adopted by Judge Eginton), that all issues relevant to the resolution of the present adversary proceedings including whether the Defendants acted "willfully and maliciously" in their conduct toward the Plaintiff, were *actually litigated* in the vigorously defended two-day hearing on damages, with each side presenting documentary evidence and witnesses. In addition, all issues relevant to the resolution of the present adversary proceedings were *decided* incident to that damages hearing, and in the Recommended Ruling by the Magistrate, as later approved and adopted by Judge Eginton.

3.   Full and Fair Opportunity to Litigate the Issues.

The third requirement before a court may apply collateral estoppel to the findings is also satisfied. "There is no exact rule defining a 'full and fair opportunity' to litigate a claim or issue. 'In the end, decision [on what is a fair opportunity] will necessarily rest on the trial courts' sense of justice and equity.'" *Blonder-Tongue Lab., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 334, 91 S. Ct. 1434 (1971)." *New Eng. Health Care Emples. Welfare Fund v. iCare Mgmt., LLC*, 886 F. Supp. 2d 82, 90 (D. Conn. 2012). **"[E]ach disposition should be addressed on a case-by-case basis. This requires a review of the full record of

21

the prior proceeding, not just the judgment itself." *FTC v. Wright (In re Wright)*, 187 B.R. 826, 834 (Bankr. D.Conn. 1995).

While giving preclusive effect to a default judgment against a non-appearing defendant may be inappropriate in a routine case, particularly where the default enters in close proximity to the debtor/defendant's bankruptcy, *In re Wright, 187 B.R. at 834*, the circumstances surrounding the District Court's entry of a default judgment in this case was far from routine.  Following the entry of a default judgment for failure of the Defendants to appear and defend on December 2, 2010 and the granting of a motion for preliminary injunction on December 14, 2010, Judge Eginton referred the matter to the Magistrate for a recommended ruling on damages.  On December 13, 2010, counsel for the Defendants filed an appearance and on December 16, 2010, filed a Motion to Reopen which was denied by Judge Eginton on February 23, 2011.  In Judge Eginton's Ruling on the Motion to Reopen, he made the following findings:

1.      This action was filed in federal court on July 20, 2010.

2.      On July 22, plaintiff attempted to serve defendants with a waiver of service of summons.  Defendants Robin Delaney and Charles Pappas each signed and returned the waiver of service form on behalf of defendant Normandies Park, LLC.

3.      On August 18, Attorney Lonardo contacted plaintiff's counsel and discussed settlement of the instant action.  On September 8, Attorney Lonardo notified plaintiff's counsel that he did not represent defendants in this action.

4.      On September 30, counsel for plaintiff contacted Delaney and Pappas in an attempt to obtain proper waiver of service.  Delaney and Pappas did not respond.

5.      Plaintiff subsequently served defendants with the Summons, Complaint and related materials and filed returns of service on October 19 and October 25.

6.      Plaintiff filed a motion for entry of default on November 15 and served that motion on defendants by United States mail.  Default was entered on

November 19, 2010.

7.      Plaintiff moved for a default judgment on November 19, and she served that
motion on defendants by United States mail.  The Court granted a default
judgment on December 2.

In determining not to grant the Defendants' motion to set aside the entry of a default

judgment, Judge Eginton considered a number of factors, including whether the default was

willful;  whether  setting  aside  the  default  would  prejudice  the  adversary;  whether  a

meritorious defense was presented and equity, such as whether the Defendants were acting

in good faith.  In considering each factor, the Judge Eginton found in favor of the Plaintiff

and against the Defendants concluding, first, that the Defendants were aware of the suit

and the significance of a default[12] yet they attempted at least once to avoid service of

process; and "conscious[ly] or "willful[ly]" chose not to engage counsel; second, that the

Defendants did not present a "meritorious" defense to the court, meaning a presentation of

facts that would constitute a complete, but not necessarily conclusive defense; and three,

that in considering the relative prejudice to the parties, found the greater harm to the

Plaintiff were the court to grant the relief sought.  Judge Eginton summed up the ruling as

follows:  "[D]efendants have willfully evaded participation in this action, her septic system

continues to require service, and further delay enables defendants to dissipate assets.  This

factor also weighs against reopening the default judgment.  Accordingly, in light of the fact

that each factor weighs against granting of defendants' motion, particularly the prior two

prongs, the Court will deny defendants' motion to reopen." Ruling on Motion to reopen, p.

7.  Thus, Judge Eginton determined that the Defendants knew about the litigation, decided

not  to  engage  counsel  at  the  outset  of  the  case  and,  in  effect,  had  a  "full  and  fair

---

[12]Judge Eginton described Pappas' assertion that he was unaware of the possibility of default as
"disingenuous."

opportunity" to defend against the lawsuit but chose not to do so.

Moreover, following Judge Eginton's denial of the Motion to Vacate, the Defendants had a "change of heart" and vigorously defended the balance of the proceeding, until such time, approximately eighteen months later, when each Defendant filed bankruptcy. While a default judgment "is deemed to constitute a concession of all well pleaded allegations of liability," it "is not considered an admission of damages." *Greyhound ExhibitGroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). As noted earlier, on March 24th and April 14th 2011, a highly contested hearing on damages took up two full days of court time. It was during this aspect of the case, that the Magistrate considered the extent to which the Defendants wrongfully and intentionally caused emotional and physical harm to the Plaintiff.[13]

Following the approval and adoption of the Magistrate's Recommended Ruling by Judge Eginton and entry of judgment by the court on February 10, 2012, Defendants filed *inter alia*, a motion to stay the judgment, an appeal of the judgment, an appeal of the denial of the motion to reopen, an appeal of the approval and adoption of the Magistrate's Recommended Ruling and appeal of the award of attorneys' fees. Five months later and a week following the Plaintiff's filing of a motion for enforcement of a writ of execution on July 20, 2012, Delaney filed the first of the two Chapter 7 bankruptcy cases.

The above recitation of the Defendants' conduct in the later stages of the case and the general description of the time-line, makes clear that the Defendants were active in their defense, had the proper incentive to litigate, and their failure to participate in the earlier

---

[13] During this stage of the District Court Case, other litigation matters were also fully contested by the Defendants, including, disputes over the disclosure of Defendants' assets, attorneys' fees requests, motions for prejudgment attachments and motions for sanctions.

stages of the District Court Case was deliberate.[14]   Upon a full review of the District Court

Case, it is clear that the Defendants not only had a full and fair opportunity to litigate the

willful and malicious nature of their conduct, but that the willful and malicious nature of their

conduct, was actually and vigorously litigated as it was "'otherwise placed in issue and

actually determined' at the [damages] hearing." *Yash Raj Films (USA) v. Ahmed,* 359 B.R.

at 44, quoting *Dolan v. Roth*, 325 F. Supp. 2d 122, 133 (N.D.N.Y. 2004).

4.   The Resolution of the Relevant Issues by the District Court Was Necessary to
Support a Final Judgment on the Merits.

The fourth requirement before a court may apply collateral estoppel to the findings

of an earlier proceeding is whether the resolution of the issues was necessary to support

a valid and final judgment[15] on the merits. Here**,** resolution of all issues in these

nondischargeability proceedings were necessary to support the earlier judgment in the

District Court Case, particularly the decision to award to the Plaintiff punitive damages which

required a showing of "intentional" discrimination.   The District Court's resolution of the

relevant issues in these adversary proceedings was did not involve "superfluous facts

gratuitously determined by the District Court in the course of rendering its ultimate ruling."

*FTC v. Wright,* 187 B.R. at 833.

## VI.  CONCLUSION.

The deemed admitted facts in the Plaintiff's Rule 56(a)1 Statement,  supported and

---

[14]The Defendants cannot reasonably argue that their failure to defend in the early stages of the District Court Case was due to an expectation of receiving a discharge in bankruptcy as, *inter alia,* their bankruptcy cases were not commenced  until eighteen months after entry of the District Court Judgment.

[15]"[I]n the federal courts the general rule has long been recognized that while appeal with proper supersedeas stays execution of the judgment, it does not--until and unless reversed--detract from its decisiveness and finality" (footnote omitted). *Huron Holding Corp. v. Lincoln Mine Operating Co.*, 312 U.S. 183, 189 (1941).

supplemented by the Magistrate's determinations in the Recommended Ruling, adopted by Judge Eginton, clearly evidence that the Defendants, fired by the desire and objective to force Parris off the Park Property, wrongfully and without just cause or excuse, deliberately committed acts intending to injure her, and which did injure her, in an attempt to achieve that objective. The Court, has inquired into the numerous facts presented and determined in the District Court Case, and has concluded that the issues presented in these Adversary Proceedings are in substance the same as those resolved in the District Court Case.

The four requisites for collateral estoppel which are applied to establish the preclusive effect of a prior federal judgment have been satisfied in these proceedings. Identical issues were raised in a previous proceeding, *i.e.*, the District Court Case; the relevant issues were actually litigated and decided in that case; the Defendants had a full and fair opportunity to litigate the issues; and the resolution of the issues were necessary to support a valid and final judgment on the merits.

Having determined that the four elements of federal collateral estoppel have been met, the Court finds that the doctrine of collateral estoppel precludes re-litigation of the §523(a)(6) issues in the present proceedings. As there are no genuine issues of material fact left to be tried by this Court on the issue of nondischargeability under §523(a)(6), the Plaintiff is entitled to judgment as a matter of law in each of these Adversary Proceedings.[16]

## VII. ORDER.

In accordance with the above,

**IT IS HEREBY ORDERED** that Plaintiff's *Motion for Summary Judgment*, ECF No.

---

[16]As previously noted, fn. 3, *supra*, Count Two of the Complaint against Pappas (Adv. P. No. 12-2081) seeking a denial of discharge as to him pursuant to §727(a)(2) is not affected by this Memorandum of Decision and related Judgment.

26

17, is **GRANTED** – the District Court Judgment debts owed by the Defendants to the Plaintiff in the amount of $262,407.00 in compensatory and punitive damages, $87,392.50 in attorneys' fees, and additional attorneys' fees authorized by United States Magistrate Judge Fitzsimmons in her Order of August 6, 2012 in an amount to be determined in further proceedings in the District Court Case, are **NONDISCHARGEABLE** pursuant to §523(a)(6).

A Judgment consistent with this Memorandum of Decision shall enter in Adversary Proceeding Nos. 12-2078 and 12-2081 simultaneously herewith.

Dated: January 29, 2014                                        BY THE COURT

Albert S. Dabrowski
Chief United States Bankruptcy Judge